Loring, J.,
delivered the opinion pf the court:
• In this-case the claimant sués for the net proceeds of seventy-five bales of cotton, and the court finds the facts to be—
That in the month of September, 1864, the claimant was a citizen of Georgia, and owned and possessed of seventy-three bales of cotton, then stored in the city of Atlanta.
That the said seventy-three bales of cotton were taken out of the possession of the plaintiff by the United States, and by them sold at public auction, and the net proceeds thereof, amounting to the sum of $26,275 62, paid into the public Treasury.
That the claimant was a loyal citizen of the United States, and had never voluntarily aided, abetted, or given encouragement to the rebellion against the government.
In this case the petition was filed November 19,1867, the statute of limitations was pleaded, and the plea was held to be bad, for the reason stated in the opinion read by the Chief Jus *535 tice in the case of Grossmeyer v. The United States, recently decided, (p. 1, ante.)
Objections to testimony offered by tbe plaintiff were taken on tbe part of tbe Dnited States. Tliese were sustained and tbe testimony stricken out in tbe instances following, viz:
1. Tbe words “ I also beard men say that be bad been loyal before. I understood that tbe Federáis gave positions to no one only those that bad been loyal,” in tbe deposition of E. Mercer.
2. Tbe words “ My impression was at tbe time Mr. Orussell was a Union man,” in tbe deposition of Asbury P. Bell.
3. Tbe words “It was a public rumor on the street here that Mr. Orussell, in company with Ed. Murphy and others, appropriated provisions collected by tbe southern relief committee to the feeding of a train load of Union prisoners captured at tbe battle of Chickamauga and sent to this place. It was charged that this was done while tbe train stopped over here one night,” in tbe deposition of Asbury P. Bell.
4. Tbe words “He told me it was captured cotton from Atlanta, Georgia,” in tbe deposition of Wan. Drake.
5. Tbe deposition of tbe claimant.
6. Tbe words “Mr. Orussell told me at divers times during tbe war that be bad cotton and was bolding it for an investment,” in deposition of F. P. Bice.
7. The words “ be said be was going to sell it and invest it in cotton;” ibid.
8. Tbe words “ At tbe time Mr. Orussell purchased this cotton be told me be was buying it for an investment to bold through tbe war,” in tbe deposition of W. H. Bice.
9. Tbe words “Which be also said be was going to invest;” ibid.
And tbe objections, taken in tbe following instances, were overruled:
1. To tbe words “When they were putting on tbe second load, Mr. Orussell, tbe claimant, came up, and they -told him that Captain Hade told them to take all tbe cotton that was in tbe city,” in tbe deposition of John Ooben.
2. To tbe words “I beard tbe officer tell Mr. Orussell that be took tbe cotton for Captain Hadeibid.
3. To tbe words “ I knew Mr. Orussell was a Union man during tbe war,” in deposition of Benjamin Kelly.
4. To tbe words “ From Mr. Crussell’s conversations during *536 tbe war I think be was a Union, man,” in tbe deposition of Isaac O’Sbields.
The evidence in tbe case shows that tbe claimant purchased a larger part of this cotton (fifty bales) of William T. Qnimby, June 15, 1863, and was in possession of tbe rest of it in that year; and that thereafter he stored it, and bad it guarded, and thus exercised acts of ownership over it till it was taken from him by the forces of tbe United States shortly before their evacuation of Atlanta.
That when taken it was carted to tbe railroad to be carried to Cincinnati, where sales of captured cotton were made. As tbe cotton was thus shown to have .come to tbe possession of tbe United States, tbe burden was imposed upon them to account for it, and all that was shown was that a portion of cotton shipped to Cincinnati was burned, and as in other cases, a proportional allowance for that has been made in this case.
Tbe loyalty of tbe claimant was proved' by tbe testimony of those acquainted with bis daily life, and who attested to bis general reputation for loyalty among Union men, and others, in Atlanta. And tbe evidence shows acts of kindness on bis part in feeding Union prisoners from bis bouse, subscribing money to buy them clothes, and obtaining for them, at bis personal risk, provisions from a Confederate charitable institution for tbe relief of Confederate soldiers. He left bis work to avoid being called into service in tbe Confederate army, and joined a fire company for tbe same purpose. And though that was armed afterwards for home defense, and was called into camp to repel raids at one time, tbe evidence showed that be was not armed, and was not in camp. And it appeared that be bad procured himself to be detailed to attend to tbe water cisterns.
On tbe whole case we are of opinion that tbe claimant is entitled to judgment for tbe net proceeds of seventy-tbree bales of cotton, seized and sold as aforesaid, and wbicb were paid into tbe Treasury, and amoimted to tbe sum of twenty-six thousand two hundred and seventy-five dollars and sixty-two cents, ($26,275 62.)